37 F.3d 1494
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Gary JUDD, Plaintiff-Appellant,
v.
CITY OF HARRISONBURG; Marvin Milam; Roger Baker, Acting
City Manager, Defendants-Appellees,
and Walter F. GREEN, III, Mayor; Elon W. Rhodes, Vice
Mayor; Curtis F. Kite; C. Robert Heath, Defendants.
 No. 92-2513.
 United States Court of Appeals, Fourth Circuit.
 Submitted August 4, 1993.
Decided October 7, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. B. Waugh Crigler, Magistrate Judge. (CA-91-77-H)
 Robert P. Dwoskin, Charlottesville, VA, for appellant.
 James W. Hopper, Richmond, VA, for appellees.
 W.D.Va.
 AFFIRMED.
 Before WIDENER, WILKINS, and WILLIAMS, Circuit Judges.
 
 OPINION
 PER CURIAM
 
 1
 Gary Judd, former Erosion and Sediment Control Administrator and City Surveyor for the City of Harrisonburg, Virginia, appeals from the magistrate judge's[1] dismissal of his claim for damages and injunctive relief against the City and several city officials under 42 U.S.C. Sec. 1983 (1988). Judd's Complaint challenged the termination of his position with the City on First Amendment and Due Process grounds. Finding no error, we affirm.
 
 
 2
 The appellate record illustrates that Judd was removed from his position as Erosion and Sediment Control Administrator and transferred to another department within the city government at the height of his disputes with developers over enforcement of erosion and sediment control ordinances. He continued his duties as City Surveyor for one year after his transfer, and was ultimately terminated for budgetary reasons in June 1991.
 
 
 3
 Judd argues on appeal that he was transferred and terminated in violation of the First Amendment due to his public dispute with developers and the friction this caused with city officials. In support of this free speech claim, he points to letters written to developers and copied to city council during the course of his work as Erosion and Sediment Control Administrator. However, he has failed to identify any particular speech or expression other than his communications with developers during the natural course of employment which might have caused his transfer and ultimate termination. As in Dennison v. County of Frederick, 921 F.2d 50 (4th Cir.1990), cert. denied, 59 U.S.L.W. 3837 (U.S.1991), we therefore find that the dispute here at issue concerns a "general course of conduct," or Judd's handling of enforcement matters over time, rather than the expression of a specific idea or opinion warranting First Amendment protection. See id. at 54.[2]
 
 
 4
 Judd next asserts that the termination decision violated his substantive and procedural Due Process rights. In order to claim the procedural protections of the Fourteenth Amendment, a complainant must establish that he suffered a deprivation of a liberty or property interest. Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Royster v. Board of Trustees, 774 F.2d 618, 620 (4th Cir.1985), cert. denied, 475 U.S. 1121 (1986); Beckham v. Harris, 756 F.2d 1032, 1036 (4th Cir.), cert. denied, 474 U.S. 903 (1985). A property interest in a position of employment requires a showing of some "legitimate claim of entitlement to it[,]" Roth, 408 U.S. at 577, as might be established by the existence of an employment contract providing that an employee may only be terminated for good cause. See, e.g., Royster, 774 F.2d at 620. Here, Judd admitted that he had no employment contract with the City and that he was free to leave at any time. He provided no other evidence supporting a claim of entitlement to his position. It thus appears that he was an at-will employee who had no identifiable property interest in continued employment with the City.
 
 
 5
 A liberty interest giving rise to Fourteenth Amendment procedural safeguards exists "when government action threatens an employee's good name, reputation, honor or integrity[,]" or where an employee is foreclosed, by dismissal, "from taking advantage of future employment opportunities." Beckham, 756 F.2d at 1038. "In such a case, due process requires that the aggrieved individual be afforded a hearing to clear his good name." Id. Judd asserts that his liberty interest was violated by his transfer during the public controversy over development, and that the City's press release recognizing his transfer tainted his reputation. He further asserts that the termination rendered him unemployable in the City.
 
 
 6
 We find that none of the facts cited by Judd give rise to a protectable liberty interest. The Supreme Court made clear in Roth that something more than the natural embarrassment accompanying termination is required. The termination must be accompanied by charges that could "seriously damage [the former employee's] standing and associations in his community[,]" in order to support the existence of a liberty interest giving rise to Due Process protections. Roth, 408 U.S. at 573. No such charges were made here.[3] Similarly, the difficulties in finding another job after acquiring a "record of nonretention" in a prior job is not the type of foreclosure of future employment opportunities which the Fourteenth Amendment was intended to address. Id. at 574 n. 13. A regulation barring Judd from public employment in the City might constitute actionable conduct, according to an example provided by Roth,[4] but nothing so drastic and formidable happened in this case.
 
 
 7
 Judd's substantive due process claim is likewise without merit. Absent his First Amendment and procedural Due Process claims, which fail for those reasons noted above, he has identified no substantive constitutional right violated by the Defendants, and thus cannot claim the freedom from arbitrary state action which such a right generates. His right to continued employment with the City is essentially a state law matter rather than a fundamental constitutional concern.
 
 
 8
 Huang v. Board of Governors, 902 F.2d 1134, 1142 n. 10 (4th Cir.1990).
 
 
 9
 Finding no merit in Judd's constitutional claims, we affirm the magistrate judge's decision. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 This case was heard by a magistrate judge with the parties' consent, pursuant to 28 U.S.C.A. Sec. 636(c)(1) (West Supp.1993)
 
 
 [2]
 Furthermore, proof of a causal connection between the development dispute and Judd's eventual termination one year later is lacking on this record. The plaintiff who seeks to resist a motion for summary judgment must offer evidence sufficient to return a trial verdict for him. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A jury verdict on the question of causation must be supported by evidence rising to the level of a " 'reasonable probability' " rather than a "mere 'possibility.' " Johnson v. Elizabethtown, 800 F.2d 404, 406 (4th Cir.1986) (quoting Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir.1982)). Other than Judd's general allegations, evidence rising to the requisite level of proof does not exist on this record
 
 
 [3]
 The press release cited by Judd simply recognized that Judd had been transferred without casting aspersions on his good name
 
 
 [4]
 Id. at 573